**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| IN RE GEORGE ANN SOUSA, | : | Bankruptcy No. 05-48815 (KCF) |
|  | : | Adv. Proc. No. 06-2319 (KCF) |
| Debtor. | : |  |
| ――――――――――――――――――――――――― | : |  |
|  | : |  |
| GEORGE ANN SOUSA, | : |  |
|  | : | CIVIL ACTION NO. 07-3514 (MLC) |
| Appellant, | : |  |
|  | : |  |
| v. | : | **MEMORANDUM OPINION** |
|  | : |  |
| OLD REPUBLIC NATIONAL TITLE | : |  |
| INSURANCE COMPANY, et al., | : |  |
|  | : |  |
| Appellees. | : |  |
| ――――――――――――――――――――――――― | : |  |

George Ann Sousa ("Debtor") filed a voluntary bankruptcy petition under chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § ("Section") 101, et seq. ("Bankruptcy Code"), on October 13, 2005. See Bankr. No. 05-48815, dkt. entry no. 1, Pet. On May 8, 2006, the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court") entered an order denying confirmation of the Debtor's proposed chapter 13 plan because "her unliquidated claims exceed[ed] the statutory limitation of $307,000". Id., dkt. entry no. 21, 5-8-06 Ord. The following day, the Debtor filed a Notice of Voluntary Conversion to Chapter 7. Id., dkt. entry no. 20, Conversion Not.

Old Republic National Title Insurance Company ("Old Republic") and Stewart Title Guaranty Company ("Stewart", and together with Old Republic, the "Title Companies") commenced an

adversary proceeding against the Debtor seeking a judgment (1) declaring that the Debtor's debts to the Title Companies are nondischargeable under Sections 523(a)(2)(A), 523(a)(2)(B), 523(a)(4), and 523(a)(6), and (2) denying the Debtor a discharge pursuant to Section 727(a)(4).  See Bankr. Adv. Proc. No. 06-2319, dkt. entry no. 1, Compl.  The Title Companies moved for summary judgment in their favor on all of their claims in the adversary proceeding.  Id., dkt. entry no. 8.  In opposition to the motion, the Debtor sent a one-page letter to the Bankruptcy Court stating, inter alia, that she intended to call a witness at trial who would "exonerate" her.  Id., dkt. entry no. 10, 4-26-07 Blanchard Letter.  The Debtor also submitted two brief certifications.  Id., attached Sousa Cert.; id., dkt. entry no. 11, Sousa Supplemental Cert.

The Bankruptcy Court held a hearing on the motion for summary judgment on May 7, 2007.  See id., dkt. entry no. 26, 5-7-07 Hr'g Tr.  Thereafter, the Bankruptcy Court, on May 15, 2007, entered an Order for Summary Judgment ("5-15-07 Order") (1) finding that there were no genuine issues of material fact and the Title Companies were entitled to judgment as a matter of law, (2) denying the Debtor a "global discharge" pursuant to Section 724(a)(4), and (3) ordering that the Title Companies' requests for summary judgment on their claims under Sections 523(a)(2)(A), 523(a)(2)(B), and 523(a)(4) were moot in light of the Bankruptcy

Court's holding under Section 724(a)(4).  Id., dkt. entry no. 12, 5-15-07 Ord.  The Debtor now appeals from the 5-15-07 Order.  For the reasons stated herein, the Court will affirm the 5-15-07 Order.[1]

## BACKGROUND

## I.   Events Preceding the Debtor's Bankruptcy Case

The Superior Court of New Jersey entered a judgment against the Debtor on December 23, 1997 in In the Matter of the Estate of George C. Spence, No. J-15300-00, dkt. entry no. L-2863 (N.J. Super. Ct. Ch. Div. Dec. 23, 1997) ("state court judgment"). (Appellees Br., at 3.)  See Bankr. Adv. Proc. No. 06-2319, dkt. entry no. 8, Appellees' Stmt. of Mat. Facts, Ex. C, state court judgment.  Specifically, the state court judgment provides, inter alia, that:

> judgment is hereby entered against [the Debtor] in favor of the Estate of George C. Spence in the amount of $104,159.55, by reason of the fact that certain gifts allegedly made by the decedent during his lifetime through [the Debtor] are void as they were the result of undue influence and that certain payments made by [the Debtor] from the funds of the decedent during his lifetime have not been adequately accounted for[.]

Bankr. Adv. Proc. No. 06-2319, dkt. entry no. 8, Appellees' Stmt.

---

[1] The Debtor moved for reconsideration of the 5-15-07 Order. Id., dkt. entry no. 13, Mot. for Recons.  The Bankruptcy Court denied that motion after holding a hearing on June 18, 2007. Id., dkt. entry nos. 17, 27, Mot. for Recons. & 6-18-07 Hr'g Tr.

of Mat. Facts, Ex. C, state court judgment.  The state court
judgment was recorded as a lien on January 27, 2000.  Id.

The Debtor, in connection with a refinancing, executed a
sworn Affidavit of Title on June 24, 2002, stating that she owned
the "property located at 13 River Drive, Township of Dover, NJ
08753" ("Property").  (Appellant Br., Ex. B, 6-24-02 Aff. of
Title.)  The Affidavit of Title provides, inter alia, that:

> We have not allowed any interests (legal rights) to be
> created which affect our ownership or use of this
> property.  No other persons have legal rights in this
> property . . . .  There are no pending lawsuits or
> judgments against us or other legal obligations which
> may be enforced against this property. . . .  All liens
> (legal claims, such as judgments) listed on the
> attached judgment search or lien search are not against
> us, but against others with similar names.

(Id.)  However, a civil judgment search performed on February 7,
2005 indicated that the state court judgment remained outstanding
on the date the Debtor signed the Affidavit of Title.  See Bankr.
Adv. Proc. No. 06-2319, dkt. entry no. 1, Compl., Ex. B, 2-7-05
Judgment Search Results.  The Debtor argues that when she signed
the affidavit she "was told by the attorney doing the real estate
closing, and directly responsible for the preparation of the
Affidavit of Title, to merely sign [it] without regard to any
list of judicial liens."  (Appellant Br., at 1.)

Relying on the Debtor's representations in the sworn
Affidavit of Title, Stewart issued a title policy with respect to
the Property.  (Appellees Br., at 4.)  The Property was later

4

sold at a sheriff's sale to certain third parties.  (Id.)  The third parties then obtained a title policy with respect to the Property from Old Republic.  (Id.)

The Superior Court of New Jersey, on August 20, 2004, entered a judgment in Spence v. Sousa, No. MID-L-7499-99 (N.J. Super. Ct. Law Div. Aug. 20, 2004) ("second state court judgment").  See Bankr. Adv. Proc. No. 06-2319, dkt. entry no. 8, Appellees' Stmt. of Mat. Facts, Ex. G, second state court judgment.  In the second state court judgment, the Superior Court, inter alia, (1) amended the state court judgment "retroactively to the date of its entry, December 23, 1997, to the amount of $98,159.44 to account for various other credits with post judgment interest accruing from the date of the entry of the judgment", (2) entered judgment in favor of the Estate of George C. Spence and against the Debtor in the amount of $144,481.68 with prejudgment interest accruing from the date of the complaint, and (3) directed the Estate of George C. Spence to give the Debtor a $90,000 credit because the estate "settled an action of legal malpractice against its former attorney".  Id. at ¶¶ 1-2.  Thereafter, the executrix of the Estate of George C. Spence sold the Property to satisfy the outstanding judgments against the Debtor.  (Appellees Br., at 4.)  As a result, the Title Companies "were forced to pay" the executrix, and were assigned the state court judgment.  (Id. at 5.)  See Bankr. Adv.

Proc. No. 06-2319, dkt. entry no. 1, Compl., Ex. C, Assignment of Judgment.  The Assignment of Judgment generally provides that (1) "for value received" the Estate of George C. Spence and its executrix assign to the Title Companies the state court judgment, as amended retroactively in the second state court judgment, and (2) "there is now due and owing . . . on said judgment as amended the said sum of $142,501.94, with interest and costs from the date of entry".  Bankr. Adv. Proc. No. 06-2319, dkt. entry no. 1, Compl., Ex. C, Assignment of Judgment.

## II.  The Debtor's Alleged Misconduct During Her Bankruptcy Case

The Debtor did not initially list the Title Companies as creditors on her bankruptcy schedules.  See Bankr. No. 05-48815, dkt. entry no. 1, Pet., Schedules D-F.  She also failed to list the judgment in favor of the Estate of George C. Spence in the original amount of $144,481.68, which was entered against her in the second state court judgment.  Id.  (Appellees Br., at 7.) The Debtor did, however, amend Schedule F on January 18, 2006 to add Old Republic as a creditor holding an unsecured claim, but she listed its claim amount as only $1.  See Bankr. No. 05-48815, dkt. entry no. 10, Amend. to Schedule F.  The Title Companies examined the Debtor pursuant to Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 2004 on April 20, 2006.  (Appellees Br., at 6.)  During the examination, the Debtor testified that she was "not sure" why Schedule F was amended to add Old

6

Republic, and did not know why $1 was listed as the amount owing to Old Republic.  See Bankr. Adv. Proc. No. 06-2319, dkt. entry no. 8, Appellees' Stmt. of Mat. Facts, Ex. J, Excerpt from 4-20-06 Sousa Dep., at 41-42.

The Title Companies assert that other misstatements and omissions made by the Debtor came to light during the course of the bankruptcy proceedings.  First, on Schedule I, the Debtor listed her current monthly gross income, wages, and commissions as $2,400 per month ($28,800 per year).  See Bankr. No. 05-48815, dkt. entry no. 1, Pet., Schedule I.  However, during her Bankruptcy Rule 2004 examination, the Debtor testified that she earned only $22,000 per year, and she later provided a pay stub indicating that she earned $1,888.34 per month ($23,833.42 per year).  See Bankr. Adv. Proc. No. 06-2319, dkt. entry no. 15, Appellees' Opp. to the Debtor's Mot. for Recons., Ex. A, Excerpt from 4-20-06 Sousa Dep., at 8; Id., Ex. B, Debtor's Pay Stub. (Appellees Br., at 7-8.)  Similarly, on Schedule J, the Debtor listed her monthly living expenses but "did not disclose any maintenance expenses for the Debtor's eleven (11) year old vehicle with 188,000 miles, or any tolls, insurance, gas, parking or other expenses for the vehicle; or clothing expenses." (Appellees Br., at 8)  See Bankr. No. 05-48815, dkt. entry no. 1, Pet., Schedule J.  The Debtor only included $200 per month for "Transportation (not including car payments)" and $110 per month

for auto insurance.  See Bankr. No. 05-48815, dkt. entry no. 1, Pet., Schedule J.  During her Bankruptcy Rule 2004 examination, however, she testified that (1) her "car needs a lot of help", (2) she pays $2 in tolls to travel to and from work and $5 per month for parking, (3) she was not sure what the $200 for transportation costs that she listed on Schedule J included, and (4) she estimates that she will spend approximately $100 to $150 per month on clothing and related expenses.  See Bankr. Adv. Proc. No. 06-2319, dkt. entry no. 15, Appellees' Opp. to the Debtor's Mot. for Recons., Ex. A, Excerpt from 4-20-06 Sousa Dep., at 22-26.

The Title Companies also point out that an attorney who was present at the Debtor's first meeting of creditors held pursuant to Section 341(a), certified that the Debtor stated at the Section 341(a) meeting "that everybody knew about the judgment entered against her by the Estate of George Spence when she executed the Affidavit of Title because it was on the judgment search."  Id., dkt. entry no. 8, McDermott Aff., at ¶ 5.

### III. The Bankruptcy Court's May 7, 2007 Rulings

The Bankruptcy Court, at the conclusion of the hearing on May 7, 2007, determined that summary judgment in favor of the Title Companies was appropriate with respect to their claim that the Debtor should be denied a discharge pursuant to Section 727(a)(4)(A) (count 5).  Id., dkt. entry no. 26, 5-7-07 Hr'g Tr.,

8

at 17-18.  The Bankruptcy Court acknowledged that the Debtor
attempted to raise a genuine factual issue by asserting that, at
trial, her former attorney would testify that she was not shown
the state court judgment at the time she executed the Affidavit
of Title.  Id. at 13.  The court noted that the Debtor's counsel
made "no attempt to relate the proposed testimony to any of the
elements of the five causes of action asserted in the complaint",
but stated that it would view the evidence in the light most
favorable to the Debtor and assume that the proposed testimony
would negate the element of intent.  Id.  Thus, the court
determined that the proposed testimony "could be relevant" to the
Title Companies' Section 523(a)(6) (count 4) and Section
727(a)(4) (count 5) claims.  Id.

The Bankruptcy Court acknowledged that in addition to
arguing that the Debtor made a false statement by signing the
Affidavit of Title, the Title Companies assert that the Debtor
made false statements when she (1) failed to list them as
creditors on her bankruptcy schedules, and (2) amended Schedule F
to include Old Republic but listed $1 as the amount it is owed.
Id. at 14.  The court stated, "there is no way the testimony of
the attorney who did the Debtor's refinance is relevant to a
false statement made in connection with her bankruptcy proceeding
filed three years later."  Id.  The court also stated that it
"still has no direct evidence from the Debtor, maybe hearsay, on

the issue of her intent with regard to failing to list the title companies accurately in her schedules." Id.  The Bankruptcy Court then determined that although the Debtor's failure to initially list the Title Companies as creditors "may or may not have been material", her later listing the amount she owed to Old Republic as $1 "certainly was" material. Id. at 17.  The court explained that if she had listed the actual amount she owed to Old Republic on her schedules, she would have been over the unsecured debt limit, and thus, ineligible to file her bankruptcy petition under chapter 13. Id.  Thus, the Bankruptcy Court concluded that there was sufficient circumstantial evidence of intent to deceive. Id.  Therefore, the court stated that it intended to grant summary judgment in favor of the Title Companies on their Section 724(a)(4)(A) claim (count 5), and consider the remaining counts of the adversary complaint moot. Id.

## DISCUSSION

### I.  Jurisdiction and Standard of Review

A district court has appellate jurisdiction over a bankruptcy court's final judgments, orders, and decrees.  28 U.S.C. § 158(a).  A district court reviews a bankruptcy court's "legal determination de novo, its factual findings for clear error[,] and its exercise of discretion for an abuse thereof." In re Rashid, 210 F.3d 201, 205 (3d Cir. 2000); see Fed.R.Bankr.P.

10

8013 ("On appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.  Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous.")  Also, the Court, when addressing mixed questions of law and fact, divides the questions into their respective components and applies the appropriate standard to each.  <u>In re Brown</u>, 951 F.2d 564, 567 (3d Cir. 1991).

## II. Legal Standards[2]

### A. Summary Judgment Standard

Bankruptcy Rule 7056 states that Federal Rule of Civil Procedure ("Rule") 56 applies in bankruptcy adversary proceedings.  Fed.R.Bankr.P. 7056.  Rule 56 states that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The movant bears the initial burden of showing that there is no genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the movant has met this prima facie burden, the non-movant must "set out specific facts showing a

---

[2] The Debtor's bankruptcy case was commenced prior to the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.  <u>See</u> 109 P.L. 8, 119 Stat. 23 (2005). Section 727(a)(4)(A), which is discussed at length in this Legal Standards section, was not amended in that Act.

genuine issue for trial." Fed.R.Civ.P. 56(e)(2).  A non-movant

must present actual evidence that raises a genuine issue of

material fact and may not rely on mere allegations.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The Court must view the evidence in the light most favorable

to the non-movant when deciding a summary judgment motion.

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

587 (1986).  At the summary judgment stage, the Court's role is

"not . . . to weigh the evidence and determine the truth of the

matter but to determine whether there is a genuine issue for

trial."  Anderson, 477 U.S. at 249.  Under this standard, the

"mere existence of a scintilla of evidence in support of the

[non-movant's] position will be insufficient [to defeat a Rule

56(c) motion]; there must be evidence on which the jury could

reasonably find for the [non-movant]."  Id. at 252.  "By its very

terms, this standard provides that the mere existence of some

alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact."

Id. at 247-48 (emphasis in original).  A fact is material only if

it might affect the action's outcome under governing law.  Id. at

248.  "[T]here is no issue for trial unless there is sufficient

evidence favoring the nonmoving party for a jury to return a

verdict for that party.  If the evidence is merely colorable, or

12

is not significantly probative, summary judgment may be granted."
Id. at 249-50 (internal citations omitted).

### B.   Section 727(a)(4)(A)

The purpose of the Bankruptcy Code is "to relieve debtors
from the weight of oppressive indebtedness and provide them with
a fresh start."   Ins. Co. of N. Am. v. Cohn (In re Cohn), 54 F.3d
1108, 1113 (3d Cir. 1995).   Section 727 provides that (1) the
bankruptcy court must grant the debtor a discharge, and (2) such
a discharge "discharges the debtor from[, inter alia,] all debts
that arose before the date of the order for relief".   See 11
U.S.C. § 727(a)-(b).   However, the Bankruptcy Code provides
exceptions to discharge in certain circumstances involving debtor
malfeasance.   JP Morgan Chase Bank v. Tamis, No. 05-737, 2005
U.S. Dist. LEXIS 28120, at *11-*12 (D.N.J. Nov. 16, 2005).   The
Bankruptcy Code provisions providing exceptions to discharge are
strictly construed against creditors and in favor of the debtor.
Id. at *12; In re Cohn, 54 F.3d at 1113.   A party objecting to
discharge under Section 727(a)(4)(A), for example, bears the
burden of proving that the debtor is not entitled to a discharge
by a preponderance of the evidence.   Georges v. Georges (In re
Georges), 138 Fed.Appx. 471, 472 (3d Cir. 2005); see Grogan v.
Garner, 498 U.S. 279, 286-87 (1991) (determining that
preponderance of the evidence is the appropriate burden of proof

13

governing the applicability of the Bankruptcy Code's nondischargeability provisions).

The Bankruptcy Court relied on Section 727(a)(4)(A) in reaching its determination that the Debtor was not entitled to a discharge.  Section 727(a)(4)(A) requires the Bankruptcy Court to grant a debtor a discharge unless such debtor "knowingly and fraudulently, in or in connection with the case - (A) made a false oath or account".  11 U.S.C. § 727(a)(4)(A).  This provision:

> imposes affirmative duties upon a debtor to disclose
> the existence of all assets and his ownership interest
> in property and to answer all questions fully and
> honestly for the benefit of his or [her] creditors and
> other parties with an interest in . . . the debtor's
> bankruptcy case who are entitled to a "truthful
> statement of the debtor's financial condition."

Scimeca v. Umanoff, 169 B.R. 536, 542 (D.N.J. 1993) (alterations and omissions in original) (citations omitted), aff'd, 30 F.3d 1488 (3d Cir. 1994) (table decision); Smith v. Faiella (In re Faiella), Adv. Proc. No. 06-1547, 2007 Bankr. LEXIS 2042, at *24-*25 (Bankr. D.N.J. June 13, 2007) (citations omitted).  Thus, to establish an objection to discharge under Section 727(a)(4)(A), a plaintiff must show that (1) the debtor knowingly and fraudulently made a false oath, and (2) such oath related to

14

a material fact.  <u>Scimeca</u>, 169 B.R. at 542; <u>In re Faiella</u>, 2007 Bankr. LEXIS 2042, at *25.[3]

"Whether a debtor has made a false oath within the meaning of [Section] 727(a)(4)(A) is a question of fact." <u>Scimeca</u>, 169 B.R. at 543.  A false statement or an omission on the debtor's schedules or Statement of Financial Affairs, or made during an examination conducted in connection with the bankruptcy proceedings may support denial of discharge pursuant to Section 727(a)(4)(A).  <u>See id.</u> at 542; <u>In re Faiella</u>, 2007 Bankr. LEXIS 2042, at *25.  However, advice of counsel may excuse an inaccurate or false oath.  <u>In re Georges</u>, 138 Fed.Appx. at 472. In addition to showing that the debtor made a false statement of omission, the objecting party must also show that the debtor actually intended to hinder, delay, or defraud creditors.  <u>Id.</u> "The requisite degree of fraudulent intent is shown if the debtor 'engaged in behavior which displayed a reckless and cavalier disregard for the truth.'" <u>Isaacson v. Castiglione (In re Castiglione)</u>, Adv. Proc. No. 06-1932, 2007 Bankr. LEXIS 1316, at *10 (Bankr. D.N.J. Jan. 30, 2007) (citations omitted).

---

[3] The <u>Faiella</u> bankruptcy court acknowledged that in <u>Scimeca</u>, the district court required the party objecting to discharge to establish the elements of its Section 727(a)(4) claim by clear and convincing evidence.  2007 Bankr. LEXIS 2042, at *24. Nevertheless, the <u>Faiella</u> court applied the preponderance of the evidence standard of proof to the plaintiff's Section 727(a)(4) claim.  <u>Id.</u> at *23-*24.  This Court will follow the majority of courts and apply the clear and convincing standard set forth in <u>Scimeca</u>.

If the objecting party establishes that the debtor intentionally made a false statement or omission, the bankruptcy court must determine whether such statement or omission was material to the course of the bankruptcy case. Scimeca, 169 B.R. at 543. A false oath is material "if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of . . . property." Id. A false oath may be considered material even if it did not result in any detriment to a creditor or the debtor. Id.

## III. Legal Standards Applied Here

The Debtor argues that the attorney representing her in connection with her real estate refinancing in 2002 told her to sign the Affidavit of Title, but did not give her any list of judicial liens to review. (Appellant Br., at 3.) She also argues that she relied entirely on the attorney and did not know what she was signing. (Id.) Thus, she asserts that the Bankruptcy Court "erred in its ruling against the Debtor on the summary judgment motion by either ignoring this critical fact or not giving the Debtor's explanation of the circumstances its proper and critical weight." (Id.) Moreover, the Debtor contends that summary judgment was improper because (1) the Title Companies have not offered any evidence rebutting her certified statement that she was not permitted to review a list of judicial

16

liens at the time she executed the Affidavit of Title, and (2) the Bankruptcy Court "committed clear error" by failing to view the evidence in the light most favorable to her and accepting her certified statement that she was not shown a list of judicial liens as true.  (Id. at 5-6.)  The Court finds, however, that the Bankruptcy Court based its holding on the applicable law and the entire record before it, and thus, did not err in granting summary judgment in favor of the Title Companies.

The Debtor incorrectly asserts that the "factual basis which gave rise to the Bankruptcy Court's granting summary judgment Order to the [Title Companies] was based on the execution of an Affidavit of Title by the Debtor at the time of a refinancing." (Id. at 2.)  The Bankruptcy Court acknowledged that, at trial, the Debtor intended to present testimony from her former attorney indicating that she was not shown a list of judicial liens or the state court judgment at the time she executed the Affidavit of Title.  See Bankr. Adv. Proc. No. 06-2319, dkt. entry no. 26, 5-5-07 Hr'g Tr., at 13.  However, the Bankruptcy Court correctly noted that in addition to asserting that the Debtor made a false oath by signing the Affidavit of Title, the Title Companies also assert that the Debtor made false statements when she failed to list them as creditors on her schedules and later amended Schedule F to state that she owed Old Republic only $1.  Thus, the Bankruptcy Court did view the evidence in the light most

17

favorable to the Debtor and assumed that the proposed testimony of her former attorney would demonstrate that she did not intend to deceive the Title Companies when she signed the Affidavit of Title, which contained a false representation.  See id. at 13. Nevertheless, the Bankruptcy Court concluded that the attorney's proposed testimony has no relevance to the false statements the Debtor made on her bankruptcy schedules.  See id.

The Debtor executed a declaration pertaining to her schedules that states, "I declare under penalty of perjury that I have read the foregoing summary of schedules, consisting of 12 sheets, and that they are true and correct to the best of my knowledge, information, and belief."  Bankr. No. 05-48815, dkt. entry no. 1, Decl. Concerning Debtor's Scheds.  Further, the Debtor certified under penalty of perjury that her amendment to Schedule F to include Old Republic as an unsecured creditor with an outstanding claim against the Debtor in the amount of $1, was true and correct.   Id., dkt. entry no. 10, Amend. to Sched. F. Thus, the statements the Debtor made in both her original schedules and amended Schedule F may constitute false oaths under Section 727(a)(4)(A) because they were made under oath.  See The Cadle Co. v. Zofko, No. 06-170, 2007 U.S. Dist. LEXIS 95162, at *16 (W.D. Pa. Jan. 23, 2007).

The Bankruptcy Court determined that "[t]he Debtor's failure to report known information on the schedules is prima facie

18

evidence of a false oath". Bankr. Adv. Proc. No. 06-2319, dkt. entry no. 26, 5-5-07 Hr'g Tr., at 15. See Scimeca, 169 B.R. at 543 (stating that whether a debtor has made a false oath is a question of fact). The Court finds that such a determination was supported by the record before the Bankruptcy Court. Specifically, the Debtor (1) did not initially list the Title Companies as creditors on her bankruptcy schedules when they were, in fact, creditors on the date she filed her petition, (2) did not list the additional amount she owes to the Estate of George C. Spence pursuant to the second state court judgment in her schedules, and (3) amended Schedule F to include Old Republic as a creditor, but listed the debt she owed to it as $1 when its "claim far exceeds $1.00 as evidenced by the [state court judgment] of over $142,000." (See Appellees Br., at 7.) Thus, the Bankruptcy Court's determination that the Debtor made a false oath within the meaning of Section 727(a)(4)(A) was adequately supported by the evidence and was not clearly erroneous.

The Court also agrees with the Bankruptcy Court that the Debtor made a false oath on her schedules with reckless disregard for the truth. See In re Castiglione, 2007 Bankr. LEXIS 1316, at *10. When asked during her Bankruptcy Rule 2004 examination whether the Title Companies were listed on her original schedules as creditors, the Debtor responded, "I don't know. I don't know who [Old Republic or Stewart] is." Bankr. Adv. Proc. No. 06-

2319, dkt. entry no. 8, Appellees Stmt. Of Mat. Facts, Ex. J,
Excerpt from 4-20-06 Sousa Dep., at 41.  Similarly, when asked
why she amended her schedules to include Old Republic, the Debtor
replied, "I'm not sure.  I am going to have to defer to my
attorney."  Id. at 42.  She also explained that she did not know
why she listed Old Republic's claim as only $1.  Id.

     "[A] debtor cannot, merely by playing ostrich and burying
his [or her] head deeply enough in the sand, disclaim all
responsibility for statements which he has made under oath."
Scimeca, 169 B.R. at 543 (alterations in original) (noting that
discharges have been denied to debtors who claimed they did not
read their schedules before they signed them, and thus, did not
know they were making a false oath).  Accordingly, the Debtor's
extreme carelessness with respect to the information contained in
her schedules sufficiently demonstrates fraudulent intent.  See
id. ("[E]xtreme carelessness of the debtor in filling out the
Petition will not excuse a false oath.").  Moreover, the Court
agrees with the Bankruptcy Court that other circumstantial
evidence, including the fact that the Debtor would have been
ineligible to file a chapter 13 bankruptcy petition had she
listed the Title Companies and the correct amount she owes to
them on her schedules, supports a finding that the Debtor
intended to deceive her creditors.  See id. at 542-43.  Bankr.
Adv. Proc. No. 06-2319, dkt. entry no. 26, 5-5-07 Hr'g Tr., at

20

17.  It also suggests that the Debtor's "false oaths" were material because they bore a direct relationship to the Debtor's bankruptcy estate and her overall ability to invoke the protections of the Bankruptcy Code.  See Scimeca, 169 B.R. at 543.  Therefore, we find that the Bankruptcy Court did not err in granting summary judgment in favor of the Title Companies with respect to their Section 727(a)(4)(A) claim.[4]

The Court notes that the Debtor, in opposing the Title Companies' motion for summary judgment in the Bankruptcy Court, did not address or offer any evidence to rebut the Title Companies' argument that she should be denied a discharge based on false oaths she made on her bankruptcy schedules.  Instead, she (1) sent a one-page letter to the Bankruptcy Court stating, inter alia, that she intended to call a witness at trial who would testify that she was not shown any document listing the state court judgment at the time she executed the Affidavit of Title, and (2) submitted two brief certifications stating, inter alia, that she was not shown any documents listing the state court judgment at the closing of the real estate refinancing.

---

[4] After denying the Debtor a discharge under Section 727(a)(4) (count 5), the Bankruptcy Court determined that the Title Companies' remaining claims against the Debtor were moot. See Bankr. Adv. Proc. No. 06-2319, dkt. entry no. 26, 5-5-07 Hr'g Tr., at 17-18.  Accordingly, the Debtor only addressed the Title Companies' Section 727(a)(4) claim in this appeal.  Because we are affirming the Bankruptcy Court's decision, it is not necessary for the Court to address any of the Title Companies' other nondischargeability claims.

See Bankr. Adv. Proc. No. 06-2319, dkt. entry no. 10, 4-26-07 Blanchard Letter and attached Sousa Cert.; id., dkt. entry no. 11, Supplemental Sousa Cert.  These documents make no mention of the Title Companies' allegations concerning the Debtor's misstatements and omissions on her schedules.

"[T]he burden is on the [non-movant], not the [C]ourt, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment."  Morris v. Orman, No. 87-5149, 1989 U.S. Dist. LEXIS 1876, at *25-*26 (E.D. Pa. Mar. 1, 1989).  Thus, the Court concludes that the Debtor has failed, by definition, to bring to this Court's attention any evidence that could conceivably raise any genuine issue of material fact with respect to the Title Companies's claim that the Debtor made false oaths in her schedules and should be denied a discharge pursuant to Section 727(a)(4)(A).  Therefore, the Court holds that the Bankruptcy Court's grant of summary judgment in favor of the Title Companies was "appropriate" in this case.  See Anchorage Assocs. v. V.I. Bd. of Tax Rev., 922 F.2d 168, 175 (3d Cir. 1990) (noting that a movant is not automatically entitled to summary judgment simply because the non-movant fails to oppose the motion, and stating that an unopposed motion should only be granted "if appropriate").

## CONCLUSION

The Court, for the reasons stated supra, concludes that the Debtor has failed to demonstrate that the Bankruptcy Court erred in granting summary judgment in favor of the Title Companies on their Section 727(a)(4) claim (count 5).  The Court will issue an appropriate order.


                                        s/ Mary L. Cooper
                                      **MARY L. COOPER**
                                      United States District Judge


Dated: January 30, 2008